UNITED STATES DISTRICT COURT
DISTRICT OF TEXAS
SOUTHERN DIVISION

| | |
|---|---|
| RICHARD L. GUERRA JR., | ) |
| MICHELE STIEHL-GUERRA | ) |
| MATHEW GARRET | ) |
| NICOLE EMUJIOFOR | ) |
| LADONNA YARBROUGH | ) |
| STARR MCALLISTER | ) |
| CAROL BURNS | ) |
| JENNY HAYNES | ) |
| STEVEN DIEP | ) |
| | ) |
| v. | ) |
| | ) CAUSE NO. _____ |
| | ) |
| CARNIVAL CORP. | ) |
| | ) |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiffs, complain of Defendant CARNIVAL CORPORATION/ MV CARNIVAL TRIUMPH and for cause of action respectfully show this Honorable Court the following:

**Preliminary and Jurisdictional Allegations**

1      Plaintiff brings this action subject to USC› Title 28 › Part IV › Chapter 85 › § 1332,  Diversity Jurisdiction.  Plaintiffs are residents of the state of Texas and Defendant Carnival is a corporation  incorporated under the laws of Panama having its principal place of business in Florida.

**II.  VENUE**

 2      Venue is proper in this matter because the misrepresentations and failures of the Defendant took place in Galveston on or before boarding the passengers for the cruise which is the subject matter of this lawsuit.

3        In the alternative this matter is brought under the admiralty and maritime jurisdiction of this Honorable Court. Defendant, Carnival Corporation, at all times material, personally or through an agent; Operated, conducted, engaged in or carried on a business venture in this state and/or county or had an office or agency in this state and/or county; and was engaged in substantial activity within this state. Operated vessels in the waters of this state.

4        The acts of Defendant set out in this Complaint occurred in whole or in part in this county and/or state. The Defendant was engaged in the business of providing to the public and to the Plaintiff in particular, for compensation, vacation cruises aboard the vessel, Carnival Triumph. Defendant is subject to the jurisdiction of the Courts of this state.

5        The causes of action asserted in this Complaint arise under the General Maritime Law of the United States, and or Texas Law. At all times material hereto, Defendant owned, operated, managed, maintained and/or controlled the vessel, Carnival Triumph.

6        On or about February 10, 2013, Plaintiffs and other similarly situated persons were paying passengers on defendant's vessel which was in navigable waters. At all material times, Carnival allowed a hazardous condition to exist on its vessel which it knew or should have known was likely to cause injury, harm and damages to its passengers. More specifically, Carnival knew or should have known that the vessel Triumph was likely to experience mechanical and/or engine issues because of prior similar issues. A cruise in mid-January 2013 on the Triumph was affected by propulsions issues and on January 28, 2013, there was an incident

which resulted in damage to the Triumph's ship's propulsion system and generators. Notwithstanding said issues, Carnival knowingly decided to embark on the subject voyage.

7       On or about February 10, 2013, Plaintiffs and all other similarly situated passengers were at sea aboard the Carnival Triumph when the vessel's engine room caught fire. This engine room fire disabled the Triumph's propulsion system along with the vessel's generators and other necessary machinery. As a result, the vessel was left without power and other necessities to make the vessel reasonably safe for passengers, including climate control, plumbing, waste water disposal, and refrigeration for food storage. Further, the vessel was left adrift at the mercy of the sea with no way to maneuver.

8       From February 10, 2013 until February 15, 2013, Plaintiffs were harmed and/or injured as a result of the engine room fire by way of being stranded at sea without necessary services and supplies. During this time, Plaintiffs were forced to sleep on deck and/or in other communal areas on the vessel, relieve themselves into buckets, bags[1], showers, sinks, were given spoiled or rotting food that was unfit for reasonably safe human consumption, and were generally forced to live in squalid conditions that created a severe risk of injury, illness and/or disease. Due to the lack of working plumbing and sanitation systems on the vessel, sewage and/or putrid water filled with urine and feces leaked onto floors, walls, and ceilings. This sewage and/or human waste sloshed around the vessel as the vessel listed while drifting and/or while under tow. Conditions became increasingly unbearable each day due to the lack of a working ventilation system on the vessel, leading to noxious odors

and gasses that caused numerous passengers to vomit and/or become nauseous. At all times material, Plaintiffs and all similarly situated persons were fearful for their lives while they were trapped aboard defendant's vessel.

9       At all times material, due to the negligence and/or gross negligence and/or intentional conduct of the Defendant, Plaintiffs were placed in an immediate risk of physical harm. Said risk of physical harm included but is not limited to: disease, dehydration, illness, injury, and/or death.

10      Defendant's negligence and/or gross negligence and/or intentional conduct caused severe emotional distress in the Plaintiffs, such as fear and anxiety. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep, and nightmares. Respiratory illness, as well as bodily injuries.

11      Carnival caused and/or worsened all of the above by acting grossly negligent, intentionally, wantonly, and/or recklessly, by failing to arrange for the reasonable disembarkation of passengers in the nearest port of call after the Triumph lost power and/or by choosing to tow the passengers to a dramatically further port of call for several days. More specifically, at the time of the fire, the vessel was roughly 150 miles from port in Progreso, Mexico and roughly 500 miles from a port in Mobile, Alabama. Carnival initially decided to return to Mexico, but later decided to travel all the way to Mobile, Alabama. This decision was motivated solely by financial gain and Carnival's convenience. Were Carnival to have been towed back to Mexico, Carnival would have needed a second tow back to the United States, at significant additional expense. Furthermore, instead of

---

[1] [1] Buckets and bags of human waste were left out in the open in public passenger spaces.

taking the more than 3,000 passengers back to Galveston, Texas (where the cruise began), Carnival decided to go to Mobile, Alabama, because that is where the repair facility is. In so doing, Carnival forced the passengers to further harm and inconvenience by putting them on a seven (7) hour bus ride back to Galveston.

12      These callous, intentional decisions subjected the Plaintiffs and all passengers similarly situated aboard the Triumph to five (5) days of deplorable, nightmarish conditions at sea. Such wanton, willful and outrageous conduct on the part of the defendant exposes them to punitive damages, which the Plaintiffs seek herein. *See Lobegeiger v. Celebrity Cruises, Inc.,* 2011 WL 3703329, 2011 U.S. Dist. LEXIS 93933 (S.D. Fla. Aug. 23, 2011).

13      Carnival's passenger ticket contract contains a contractual provision which attempts to limit its passengers' rights said provisions should be deemed void because such an attempt by Carnival to limit its liability to passengers violates 46 U.S.C. 30509.[2] *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1335–36 (11th Cir. 1984).

14      Additionally and/or alternatively, the above provision should be deemed null and void as Carnival acted intentionally[3] by both putting passengers to sea in a ship which it knew or should have known was not seaworthy and/or by failing to arrange for the reasonable disembarkation of passengers in the nearest port of call after the *Triumph* lost power and instead intentionally causing passengers to suffer

---

[2] § 30509(a)(1)(A) states: "The owner, master, manager, or agent of a vessel transporting passengers between ports in the United States, or between a port in the United States and a port in a foreign country, may not include in a regulation or contract a provision limiting [...] the liability of the owner, master, or agent for personal injury or death caused by the negligence or fault of the owner or the owner's employees or agents."

[3] "[C]ontractual exculpatory clauses absolve the exculpated party only from ordinary negligence and should not be construed to include loss or damage resulting from intentional or reckless misconduct, gross

for several days as the *Triumph* was towed to a port that was more cost-effective for Carnival.

## COUNT I – NEGLIGENCE

Plaintiffs reallege, adopt, and incorporate by reference the allegations as though alleged originally herein and further allege:

15       It was the duty of Defendant Carnival to provide Plaintiffs with reasonable care under the circumstances.

16       On or about February 10, 2013, and continuing until February 15, 2013, Carnival and/or its agents, servants, and/or employees breached its duty to provide Plaintiff with reasonable care under the circumstances.

17       Plaintiffs were injured due to the fault and/or negligence of Defendant Carnival, and/or its agents, servants, and/or employees as follows:

18       Failure to adequately inspect the Carnival Triumph, its engines and machinery, so as to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

19     Failure to adequately maintain the Carnival Triumph, its engines and machinery, so as to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

20     Failure to adequately design and/or construct the Carnival Triumph, so as to prevent the failure of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

21     Failure to promulgate policies and/or procedures aimed at preventing the failure

---

negligence, or the like."*In re New River Shipyard, Inc.*, 355 B.R. 894, 904 (Bankr. S.D. Fla. 2006)

of shipboard systems necessary to ensure the reasonable safety of its passengers; and/or

22      Failure to promulgate policies and/or procedures aimed at ensuring an adequate emergency plan that protected the health and welfare of passengers during an emergency failure of shipboard systems; and/or

23      Failure to warn passengers of dangers about which Carnival knew or should have known, specifically about the unseaworthy conditions which existed on the Carnival Triumph prior to the subject voyage including, but not limited to, prior problems with the Carnival Triumph's engines and generators; and/or

24      Failure to determine hazards that existed in the Carnival Triumph's engine room that led to the loss of power and other necessary services aboard the Carnival Triumph; and/or

25      Failure to ensure that passengers were disembarked from the Carnival Triumph within a reasonable amount of time after the vessel lost power;

and/or

26      Failure to provide passengers aboard the Carnival Triumph with adequate food and drinking water, causing food poisoning and severe discomfort; and/or Failure to provide adequate ventilation onboard the Carnival Triumph, such that passengers suffered from severe discomfort and injury caused by noxious odors and gases; and/or

27      Failure to provide adequate sanitation services to passengers aboard the Carnival Triumph, such that the passengers were subjected to conditions of squalor presenting a significant risk to the passengers reasonable health and safety; and/or

Knowing, as a result of previous similar incidents, of the likelihood of a threat to passenger safety resulting from all of the above, yet failing to take corrective action and/or implement policies and procedures aimed at preventing and/or mitigating the harmful effects of the of the subject incident; and /or

28.       Violating the International Safety Management Code by failing to have and/or adequately implement and follow their Safety Management System Manual.

At all material times, Defendant Carnival had exclusive custody and control of the vessel, Carnival Triumph.

29.       Defendant knew of the foregoing conditions causing Plaintiffs' injuries and did not correct them, or the conditions existed for a sufficient length of time so that Defendant in the exercise of reasonable care under the circumstances should have learned of them and corrected them.

30.       As a result of the negligence of Carnival, Plaintiffs were injured about Plaintiffs' body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future. Further, Plaintiffs lost the value of their vacation cruise for

which he incurred expenses, including, but not limited to the cost of the cruise ticket for himself and others as well as transportation costs.

**31** **WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

## COUNT II – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs reallege, adopt, and incorporate by reference the allegations as though alleged originally herein and further allege:

32   At all times material, due to the negligence and/or gross negligence and/or intentional conduct of the Defendant, Plaintiffs were placed in an immediate risk of physical harm. Said risk of physical harm included but is not limited to: disease, dehydration, illness, injury, and/or death.

33   Defendant's negligence and/or gross negligence and/or intentional conduct caused severe mental and/or emotional harm and/or distress in the Plaintiffs and all others similarly situated, such as fear and anxiety. These emotional injuries and/or damages have also resulted in physical manifestations, such as sickness, nausea, exhaustion, fatigue, headaches, insomnia, lack of sleep, poor sleep and nightmares. During the time period alleged in the complaint, Plaintiffs were forced to eat rotten food, live in squalid conditions, not bathe, not adequately dispose of human waste, and were subjected to tropical heat and humidity without the benefit of climate control, all of which created an immediate risk of physical injury.

34   Plaintiffs' were placed in the zone of danger as a result of the squalor that existed on the vessel. Each Plaintiff was in close proximity to conditions which did cause or could have caused serious physical injury and/or illness.

35	Plaintiffs fear of death, developing serious illness or disease and of experiencing mental, emotional and/or physical harm was genuine and well founded and Plaintiffs suffered mental or emotional harm (such as fright and anxiety) that was caused by the negligence of Carnival. This fright and anxiety has further manifested itself as multiple physical symptoms experienced by the Plaintiffs, including but not limited to insomnia, depression, rapid heartbeat, and vomiting.

36	As a result of the negligence inflection of emotional distress by Carnival, Plaintiffs were injured about Plaintiffs' body and extremities, suffered both physical pain and suffering, mental and emotional anguish, loss of enjoyment of life, temporary and/or permanent physical disability, impairment, inconvenience in the normal pursuits and pleasures of life, feelings of economic insecurity, disfigurement, aggravation of any previously existing conditions therefrom, incurred medical expenses in the care and treatment of their injuries including life care, suffered physical handicap, lost wages, income lost in the past, and their working ability and earning capacity has been impaired. The injuries and damages are permanent or continuing in nature, and Plaintiffs will suffer the losses and impairments in the future. 37  Further, Plaintiffs lost the value of their vacation cruise for which he incurred expenses, including, but not limited to the cost of the cruise ticket for himself and others as well as transportation costs.

## COUNT III – FALSE IMPRISONMENT.

38	Defendant had a duty to get the Plaintiffs off the dangerous vessel as soon as possible. Defendant could have, and should have towed the vessel to the nearest port and end the nightmare, instead they made a business decision to trap the Plaintiff's on a rotting

burned out ship against their will.

## COUNT IV – VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT.

### A. FAILURE TO DISCLOSE.

39    Carnival was aware of the pending engine problems before the Plaintiff boarded the M/V Triumph in Galveston.   Indeed, they were also engine problems on cruises just two weeks before the fateful trip. Carnival was also aware to of the potential for the fuel lines to cause the disabling fire, but did not disclose these issue to the Plaintiffs.

### B. UNCONSCIONABILITY

40    Carnival was aware of the propensity for fire aboard the vessel, and great risk of loss of life that arises from fire aboard a vessel at sea.   Carnival chose to put their profits before the safety of all those aboard the Triumph.   To add insult to injury, instead of having the vessel return to the nearest port, or offload them to other vessels, Carnival chose to imprison those passengers aboard a burned out vessel infested with disease, and little food, to save the cost of having the Triumph towed their Port of choice to make repairs.

**WHEREFORE**, the Plaintiffs demand judgment for all damages recoverable under the law against the Defendant, including punitive damages, and demands trial by jury.

*Respectfully submitted*,

\_\_\_\_/.s/_____
David "Mac" McKeand
TBN 24037782
The McKeand Law Firm
16203 S. Temple Dr.
Houston, TX   77095

713-956-0023 Telephone
713-956-0093 Fax
Attorneys for Plaintiff